IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

WELLS FARGO BANK, N.A.                                                            PLAINTIFF

v.                                                       CIVIL ACTION NO. 3:11cv226-DPJ-FKB

WEST JACKSON STUDENT HOUSING, LLC                                         DEFENDANT

ORDER

This matter is before the Court on Plaintiff Wells Fargo Bank N.A.'s Motion to Terminate Receivership Upon Plaintiff's Notice of Foreclosure [74] and Plaintiff's Amended Motion to Terminate Receivership [83]. Defendant West Jackson Student Housing, LLC, agrees that the Receivership should be terminated, and the motions will therefore be granted. But the parties disagree as to how the Receivership Property should be handled following termination of the Receivership, and the Court will address those issues.

I.      Facts and Procedural History

West Jackson owned and operated student housing near the campus of Jackson State University. West Jackson was indebted to Wells Fargo and its obligations were secured by a deed of trust on the student-housing complex and attendant personal property. Wells Fargo filed this lawsuit alleging that West Jackson failed to fulfill its obligations under various loan documents between the parties and was therefore in default. To conserve the property pending litigation, Wells Fargo sought appointment of a receiver pursuant to Federal Rule of Civil Procedure 66. On July 8, 2011, the Court entered an Order [29] appointing Campus Advantage, Inc., as Receiver over all of West Jackson's assets.

Campus Advantage attempted to sell the housing complex but was ultimately unable to do so. As such, the Substituted Trustee on the Deed of Trust offered the real property subject to

the Deed of Trust for sale at public outcry, and Wells Fargo purchased the property at the foreclosure sale for $10,000,000. Wells Fargo now asks the Court to terminate the Receivership and order Receiver to return all Receivership Property—including any cash on hand following the payment of Receiver's expenses—to Wells Fargo.

II.     Analysis

West Jackson agrees that the Receivership should be terminated in light of the foreclosure sale. But West Jackson disagrees with three aspects of Wells Fargo's proposal regarding disposition of the Receivership Property: (1) West Jackson asserts that it—not Wells Fargo—is entitled to the remaining cash on hand following the termination of the Receivership; (2) West Jackson claims the personal property securing its obligation to Wells Fargo has not been foreclosed upon and should be returned to it; and (3) West Jackson objects to the breadth of the proposed release in favor of the Receiver. The Court will address each issue in turn.

A.      Cash on Hand

Wells Fargo contends that it is entitled to whatever cash remains after the fees and expenses of Receiver are paid because under the Order Appointing Receiver, "income is applied to Receiver's fees and expenses, to the operating expenses of the Receivership, and then to reduce West Jackson's obligations under the Wells Fargo Documents." Pl.'s Reply [80] ¶ 8. Wells Fargo further asserts that, following the foreclosure sale, West Jackson remains indebted to Wells Fargo in an amount exceeding $6,000,000. Pl.'s Am. Mot. [83] ¶ 15. Any remaining cash, Wells Fargo argues, should go towards further paying down West Jackson's debt.

West Jackson counters that any money remaining after Receiver's expenses are paid belongs to West Jackson and should therefore be returned to West Jackson. As West Jackson

points out, "there has been no *adjudication* of the underlying claims in this case," and therefore no ultimate determination of the parties' rights and liabilities. Def.'s Mem. [87] at 5 (emphasis in original). As such, West Jackson suggests that giving Wells Fargo all remaining cash at this time would be premature.

The Court agrees that, at this stage, Wells Fargo has not established its entitlement to all cash in Receiver's possession. While the Order Appointing Receiver provided that income from the property should be used to pay down West Jackson's debt to Wells Fargo, Wells Fargo's entitlement to any specific sum of money has simply not been established at this time. On the other hand, the Court is sensitive to the fact that the Receivership was established to preserve the property pending an adjudication on the merits. Therefore, the Court will order Receiver to deposit any remaining cash on hand into the Court's registry. Once the parties' rights have been established through a trial on the merits, the Court will make the appropriate disposition of the funds.[1]

B. Personal Property

Wells Fargo argues that it is entitled to possession of "all of the Receivership Property, including all personal Receivership Property" because it holds a perfected lien in all that property under the Deed of Trust. Pl.'s Am. Mot. [83] ¶ 13. Wells Fargo asks the Court to "hold that Wells Fargo's lien on and security interest in and to all of the Personal Property . . . is

---

[1]In its response to Wells Fargo's amended motion, West Jackson asks in the alternative "that a sum of money be set aside for a litigation budget to allow West Jackson to defend against Wells Fargo's Complaint and to prosecute its own Counterclaim." Def.'s Mem. [87] at 17. West Jackson does not ask for a specific sum to be set aside, and its request fails to comply with Local Rule 7(b), which requires any "application for relief or other action by the court" to be "presented by a motion." If West Jackson seeks further relief from the Court on this matter, it should make its request in the form of a motion.

foreclosed." *Id.* ¶ 22.  West Jackson counters that the Court cannot "hold" that Wells Fargo foreclosed on its interest in the personal property because Wells Fargo, in fact, has done no such thing.

There is no question that the Deed of Trust granted Wells Fargo a security interest in West Jackson's personal property.  Specifically, Wells Fargo has a security interest in

> [a]ll fixtures, machinery, equipment and other personal property of every kind, description and nature whatsoever, now or hereafter located in or upon or affixed to the land described above or the improvements located thereon, or any part thereof, or now or hereafter used or to be used in connection with any present or future operation thereof or construction thereon, and now owned or hereafter acquired by the Grantor, together with any renewals, replacements or additions of or to any of the above or substitutions therefor; it being understood and agreed that all such fixtures, machinery, apparatus, equipment and other personal property are a part of and are declared to be a portion of the security for the indebtedness hereby secured, whether physically attached to such improvements or not.

Deed of Trust [12] at 349.

Though Wells Fargo could have included all the property subject to the Deed of Trust in its foreclosure sale, the Notice of Foreclosure and Substituted Trustee's Deed show that Wells Fargo sold only the real property at foreclosure.  Notice of Foreclosure [82] Ex. A, Substituted Trustee's Deed.  Thus, to the extent Wells Fargo contends that it has foreclosed upon the personal property, it is plain that Wells Fargo has not done so.  *See Estate of Walters v. Freeman*, 904 So. 2d 1140, 1142 (Miss. Ct. App. 2004) ("It is clear to this Court that the Trustee did in fact foreclose on the real property subject to the deed of trust . . . . [and i]t is equally clear . . . that the Trustee did not repossess or attempt to include in the foreclosure sale the equipment which also served as security for the promissory note.").

But once Wells Fargo purchased the real property at the foreclosure sale, it became the owner of the real property and came into possession thereof.  At that time, Wells Fargo necessarily also came into possession of the secured personal property appurtenant to the real property.  Nothing suggests that Wells Fargo's repossession of the personal property as a result of its purchase of the real property involved a "breach of the peace," and Wells Fargo therefore rightfully repossessed the personal property when it became the owner of the real property.  Miss. Code Ann. § 75-9-609 (permitting a secured party to "take possession of the collateral" in the event of default so long as it does so "without breach of the peace").  Thus, although Wells Fargo did not "foreclose" on the personal property, it effectively repossessed the personal property under section 75-9-609 of the Mississippi Code when it purchased the real property.  Wells Fargo is therefore entitled to possession of the personal property.

One issue regarding personal property remains.  West Jackson asserts that Wells Fargo is under no circumstances entitled to its intellectual property, asserting that "its intellectual property was [never] pledged to Wells Fargo."[2]  Def.'s Resp. [87] at 13.  But West Jackson's argument relies on a strained reading of the Deed of Trust, under which West Jackson pledged "[a]ll . . . personal property of every kind, description and nature whatsoever . . . now or hereafter used or to be used in connection with any present or future operation" of the real property.  Deed of Trust [12] at 349.  Contrary to West Jackson's interpretation, the Deed of Trust is not limited to "personal property located in, upon or affixed to the land" but also includes any personal property "used . . . in connection with any present or future operation" of the real property.

---

[2]Wells Fargo explains that the intellectual property at issue includes "[a]ll trade names, intellectual property rights, web site domains (including the URL www.palisades-jsu.com), and web site content related to the Complex . . . ."  Pl.'s Am. Mot. [83] ¶ 21.

Def.'s Resp. [87] at 14; Deed of Trust [12] at 349.  Under Mississippi law, as a "general intangible," intellectual property qualifies as personal property, and the intellectual property at issue is used "in connect with" the operation of the real property.  Miss. Code Ann. § 75-9-102 cmt. 5(d) ("'General intangible' is the residual category of personal property, including . . . various categories of intellectual property . . . ."); Deed of Trust [12] at 349.  Thus, West Jackson's intellectual property was among the personal property pledged in the Deed of Trust.[3]  As such, it was among the personal property Wells Fargo came into possession of when it purchased the real property at the foreclosure sale, and Wells Fargo is entitled to retain possession thereof under Mississippi law.

    C.     Release

Finally, West Jackson takes issue with the breadth of Wells Fargo's proposed release in favor of Receiver.  Specifically, West Jackson objects to the release of "unknown" or "hidden" claims—especially given the 15 days Plaintiff suggests for review of Receiver's Final Report—and of claims that existed before Receivership was established.

As to its first complaint, West Jackson seeks 30 days to review the Final Report and asserts that "[t]here is no reason this Receiver (or any receiver) should receive a discharge if it breached its duties and concealed such from the Court and parties."  Def.'s Resp. [79] ¶ 24.  West Jackson provides no authority for excluding "hidden" or "unknown" claims.  The Court shares concern about the implication of the word "hidden," but releases typically cover claims

---

[3]This conclusion is bolstered by the specific inclusion of "trademarks, service marks, trade names, [and] intellectual property rights," in the definition of Receivership Property in the Order Appointing Receiver.  Order [29] ¶ B.

that are "unknown," so that language will be included. And West Jackson will be given 30 days to object to the Final Report.

On the second issue, West Jackson contends that in the Order Appointing Receiver, the Court "specifically preserved to West Jackson any claims it had against Campus Advantage, Inc. prior to institution of Receivership." Def.'s Mem. [87] at 15. The Court does not agree with West Jackson's interpretation of the Order Appointing Receiver; the section apparently relied upon by West Jackson simply prohibits Receiver from controlling "any claims, causes of action, or proceedings . . . Borrower now has or shall have in the future against Plaintiff and/or Campus Advantage, Inc. (collectively the '<u>Excluded Litigation</u>')." Order [29] ¶ D(xii). Nevertheless, the Court sees no reason to include in the release any claims West Jackson may have against Campus Advantage that predate the institution of Receivership, so those claims will be expressly excluded from the release.

III.   Conclusion

The Court has considered all the parties' arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Wells Fargo's Motion to Terminate Receivership Upon Plaintiff's Notice of Foreclosure [74] and Amended Motion to Terminate Receivership [83] are granted, and

It is hereby ORDERED, ADJUDGED and DECREED:

1.   The Receivership established by the Appointment Order and Receiver's authority to manage, operate, and control Receivership Property are hereby terminated, subject to Receiver's duty to wind up the affairs of the Receivership estate as provided herein.

2.	With the exception of cash in the possession of Receiver related to Receivership, if any, Receiver's right to possession of Receivership Property is hereby terminated, and Receiver is hereby relieved of any further obligation with respect to Receivership Property, save and except for the activities as described herein.  Receiver shall turn over possession and control of Receivership Property to Plaintiff, except that any cash in the possession of Receiver shall be disposed of in accordance with paragraph six below.

3.	Receiver shall file the Final Report described in the Motion within forty-five (45) days of the entry of this Order and shall serve a copy of the Final Report on counsel for Plaintiff and counsel for Defendant.

4.	If no objection to the Final Report is filed with the Court within thirty (30) days of the filing of such Final Report, then, without further order, the Final Report shall be deemed approved, and Receiver shall be fully and forever released and discharged from any and all liability as Receiver of Receivership Property.  Said release and discharge shall include any and all claims, cross-claims, counterclaims, causes, damages, and actions of every kind and character, and all suits, costs, damages, expenses, compensation, and liabilities of every kind, character, and description, whether direct or indirect, known or unknown, in law or in equity, that anyone has or will have against Receiver and/or any of Receiver's agents, representatives, officers, attorneys, professionals, employees, or contractors, on account of, arising, or resulting from, or in any manner incidental to, the Receivership, Receivership Property, Receiver's possession and/or use of Receivership Property, the administration of the Receivership estate, and/or any acts or omissions of Receiver.  Provided, however, that this release shall not include any claims, causes of action, or proceedings Defendant had against Receiver on or before July 8, 2011.

5.     Any rents and/or other revenues from the operation of Receivership Property actually received by Wells Fargo or Receiver prior to the Foreclosure, which are attributable to any period after the last day of the calendar month in which the Foreclosure occurred, shall be delivered to Plaintiff as the purchaser at the foreclosure sale.  Any rents and/or other revenues from the operation of Receivership Property actually received by Plaintiff or Receiver after the Foreclosure, whether attributable to any period before or after the Closing, shall be retained by or delivered to Plaintiff, as applicable.

6.     Except as provided in paragraph five above, any cash in possession of Receiver related to the Receivership, including revenues from the operation of Receivership Property, at the time this Order is entered shall be applied against the unpaid fees and expenses of Receivership estate.  Receiver shall then deposit any funds remaining following that disbursement into the registry of the Court pending resolution of this litigation.  Upon such final distribution, Receiver shall close all bank accounts maintained by Receiver in connection with the Receivership.

7.     The termination and discharge of Receiver shall not dispose of the remaining causes of action asserted by the parties.  The stay imposed by paragraph U of the Appointment Order is hereby lifted, and Defendant's responsive pleading to the operative complaint shall be due twenty-one (21) days after the entry of this Order.

**SO ORDERED AND ADJUDGED** this the 28th day of November, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE